LANSING & ALLEN *vs.* CASWELL and others TRUSTEES OF THE VILLAGE OF LANSINGBURGH.

Where a law, passed previous to the revised statutes, gave the trustees of an incorporated village the powers of commissioners of highways within the limits of the corporation, such powers must now be exercised in conformity to the provisions of the revised statutes. And from the decision of the trustees, in laying out, altering or discontinuing a road or highway, an appeal lies to the judges of the county court.

If a regular appeal is made from the decision of commissioners of highways to the county judges, the commissioners cannot proceed and open the highway until the appeal is determined; although the judges refuse to proceed and decide upon the same, under the supposition that they have not jurisdiction of the case.

But where the appellants, after such refusal of the judges, appeared before the jury empannelled to assess their damages incurred by the laying out of the road, and litigated the question as to the amount of such damages ; and subsequently applied to the board of supervisors to increase the amount of damages allowed by the jury, *It was held,* that they had thereby waived their appeal.

The provision of the revised statutes, prohibiting the commissioners of highways from laying out a road through yards or enclosures, extends only to such yards and enclosures as are necessary to the use and enjoyment of the dwelling house or manufacturing establishment to which they are appurtenant ; and the statute must be construed in reference to the situation and nature of the property with which the yard or enclosure is connected.

Whether the appearing before the jury of the owner of a yard or enclosure through which a road is laid out, and litgating his claim for damages, and subsequently appealing to the board of supervisors for an increased allowance for damages, does not amount to a legal consent to the laying out of such road, within the meaning of the statute? Quære.

August 5.    THIS was an application to dissolve an injunction, restraining the defendants from opening and regulating a street or highway, in the village of Lansingburgh, adjacent to the dwelling house of the complainants. The street was laid out in May, 1831, by the trustees of the village of Lansingburgh acting in the capacity of commissioners of highways under the act of the 7th of April, 1824, which authorized them to act as such commissioners, upon the certificate of twelve freeholders that such street was necessary; and also claiming to act in their capacity of trustees of the village. And, by an ordinance of the board of trustees, made in November, 1832, the street was directed to be pitched and paved, and the side walks to be levelled. From the decision of the trustees, in laying out the street, the complainants appealed to three of the judges of the county courts of the county of Rensselaer. Those judges met, and after considering the matter, they decided that they had no jurisdiction to review the decision of the trustees in laying out the street, or road. They therefore dismissed the appeal. A jury was then empannelled to assess the damages sustained by the complainants by reason of the opening of such street; upon which occasion the complainants appeared, by their agent, and introduced evidence for the purpose of increasing the amount of the damages to be assessed by the jury. And at the meeting of the board of supervisors of the county of Rensselaer, in October, 1832, the complainants again appeared, by their agent, and gave evidence before that board for the purpose of obtaining from the supervisors an increase of the amount of damages assessed by the jury. But the board of supervisors, after viewing the premises and hearing the proofs and allegations as well on the part of the complainants as of the defendants, ratified and confirmed the assessment of damages as made by the jury; and caused the amount of such damages to be raised by tax, for the benefit of the complainants, as directed by the statute. In their bill, the complainants alleged, that in

the original plat of the village, as made by the proprietor more than forty years since, the street ran to the west of the place where it was laid out by the trustees of the village, in May, 1831 ; and that the place where it was so laid out had been occupied and held as a court-yard and garden, for more than forty years. They therefore insisted that the trustees, acting as commissioners of highways, had no right to lay out a street or highway over the premises ; and that the appeal from their decision being still undecided, they had no right to proceed and open the street, even if they had authority to lay it out originally. The defendants, in their answer, denied that the premises where the street was laid had ever been cultivated as a garden, previous to the laying out of the street in 1831, or that the street was laid out through a yard or enclosure necessary to the use or enjoyment of the complainants' dwelling house. They alleged, on the contrary, that that part of the enclosure had been cultivated as a potatoe patch merely. The defendants also stated in their answer, that the place where the street was laid out by the trustees acting as commissioners of highways, in 1831, was one of the original streets in the village, as laid out by the proprietor of the property more than forty years since ; and that building lots had been conveyed by the proprietor bounding on such street. They therefore insisted that the premises in controversy had been dedicated to the public as a street ; and that as a board of trustees they had a right to cause it to be opened, independent of the power given to them, as commissioners of highways, to lay out a new street.

*A. Van Vechten,* for the complainants.

*D. Buel, jun.* for the defendants.

The Chancellor. The third section of the act of the 7th of April, 1824, (*Laws of* 1824, *ch.* 176, *p.* 194,) gives to the trustees of the village all the powers of commissioners of highways, within the limits of the village ; but such powers must be exercised in conformity with the provisions of the revised statutes. (*See* 2 *R. S.* 779, § 10, 11.) There was there-

fore an unquestionable right, on the part of the complainants, to appeal from the decision of the trustees, acting as commissioners of highways, in laying out and altering the road in question; and I cannot conceive upon what grounds the judges refused to take jurisdiction of the case. The act of April, 1824, does not, in terms, give an appeal from the decision of the trustees in laying out a road in the village; but it constitutes them commissioners of highways for that purpose. And the eighty-fourth section of the title of the revised statutes relative to highways and bridges, (1 *R. S.* 518,) gives an appeal to any person, conceiving himself aggrieved by any determination of commissioners of highways, either in laying out, altering, or discontinuing, or in refusing to lay out, alter, or discontinue any road. It was therefore the duty of the judges, to whom the appeal was made, to proceed and determine the question submitted to their decision; and the proper course for the trustees, if they wished to put an end to the controversy, was to apply to the supreme court for a mandamus to compel the judges to whom the appeal was made, to proceed and determine the appeal. It was competent, however, for the appellants to waive their appeal at any time before the judges had proceeded to act upon the same; and I think there has been such a waiver on the part of the complainants in the present case. The damages occasioned by the laying out of the road could not be assessed while a regular appeal from the decision of the commissioners of highways was pending and undetermined. If the complainants, therefore, had taken no part in the proceedings before the jury, or the board of supervisors, as to the assessment of those damages, they might now have insisted that the appeal was still pending, and that the assessment was void. But it would be manifestly inequitable and improper to permit them to litigate the claim to damages before the jury, and afterwards by an appeal to the board of supervisors as to the amount which should be raised for their benefit, and if they failed in obtaining the whole amount of damages claimed, then to turn about and repudiate the whole proceedings, on the ground that their appeal from the decision of the commissioners of highways was still in force.

The appeal being waived, by these proceedings of the complainants upon their claim for damages, the road or street is properly laid out, unless it has been laid out through a garden which had been cultivated as such for four years, or through yards or enclosures necessary to the use and enjoyment of the mansion house of the complainants.   This part of the case as stated in the bill, I understand to be fully denied by the answer. It is not every court-yard or enclosure which is appurtenant or contiguous to a dwelling house, or to a manufacturing establishment, through which the commissioners are prohibited from laying out a street or highway.   It is only such yards or enclosures as are necessary to the use and enjoyment of the dwelling house, or the manufacturing establishment.   Such was the extent of the decision of the supreme court in the case of *Clark* v. *Phelps*, (4 *Cowen's Rep.* 190.)   And it was the intention of the revisors to embody the substance of that decision in the last clause of the fifty-seventh section of the statute on this subject.   (*See Rev. Rep. on ch.* 16, *p.* 15.)   This clause of the statute must be construed in reference to the situation and nature of the property to which the yard or enclosure is appurtenant.   In the country, where there is abundance of vacant land which may be appropriated for the purpose of making roads, and where the public would be equally well accommodated by the laying out of the road through such land, it would be highly improper for the commissioners of highways to attempt to lay out a road through a court-yard, or enclosure, attached to a dwelling house or a manufactory, although such yard or enclosure was not absolutely necessary to its use or enjoyment ; and such an attempt might be considered as a violation of the spirit of this clause of the statute.   But in the case of urban property, like the present, where vacant ground for the location of streets is not so easily obtained, and where a particular location is frequently a matter of importance to that part of the community for whose accommodation the street or highway is principally intended, the restriction upon the powers of the commissioners must, from the nature of the property and the relative claims of the public and the individual landholder, necessarily be more limited, in order to conform to the spirit of the statute.   In this case the street was

1834.

Lansing
v.
Caswell.

laid through a yard, or enclosure, which was contiguous to the dwelling house of the complainants. But that part of the enclosure through which the street is laid cannot be said to be necessary to the use and enjoyment of the mansion, ac-·cording to the true intent and meaning of this provision of the revised statutes. Again ; the commissioners may lay out a street through any kind of property, with the consent of the owner thereof. And perhaps it might be successfully contended in this case, that the conduct of the complainants in urging their claim to damages before the jury, and in carrying the claim for an increased allowance bofore the board of supervisors, amounted to a legal consent to the laying out of the street in the place where it had been located by the trustees acting in the capacity of commissioners of highways. *Omnis ratihabitio retro trahitur et mandato acquiparatur.* ( *Coke Litt.* 207.)

That part of the answer which sets up the right of the cor-·poration to the street, as it is now laid out, as one of the original streets of the village, laid out by the proprietor as such upon the village plat and subsequently recognized by the conveyance of building-lots bounded on the same, is not strictly responsive to the bill. It cannot therefore be sufficient of itself to entitle the defendants to a dissolution of the injunction at this time. But if the defendants are right as to the original location of this street by the proprietor, and the dedication thereof to the use of the inhabitants of the village, as stated in the answer, the fourth section of the act of April, 1824, appears to be sufficiently broad to authorize the trustees of the village of Lansingburgh to open the street as it was originally laid out by such proprietor, although the proceedings of the trustees in laying out the street, in May, 1831, under the general provisions of the revised statutes relative to roads and highways, should appear to be invalid.

The result of the conclusions at which I have arrived is that the injunction in this case must be dissolved.