JOHN HANSEE, RESPONDENT, v. RACHEL C. FIERO,
APPELLANT, IMPLEADED, ETC.

*Order opening default allowing judgment to stand as security — extension of the time*
*of the lien of the judgment — issuing execution nunc pro tunc — pleading coverture —*
*judgment, extinguishment or merger of, in a second judgment.*

The customary order made on opening a default, that the judgment shall stand as
security, simply retains the judgment as a lien upon any land of the party
against whom the judgment has been entered.

If such an order extends the time of the lien of the judgment, under section 1255
of the Code of Civil Procedure, it does not, under the provisions of that section,
extend it as against purchasers, creditors and mortgagees in good faith.

Where an original judgment has been directed to stand as security, the party in
whose favor it has been rendered is not entitled, on an application for leave to
issue execution thereon, to an order directing that the execution be issued *nunc
pro tunc*. If the party in whose favor the judgment has been rendered desires
to levy upon the land which the debtor has when the execution is issued, the
mode is described in section 1252 of the Code of Civil Procedure, but he has no
right to revive the lien, as against purchasers of land from the judgment-debtor,
by inserting a clause in the order directing the issuing of the execution, that it
be issued *nunc pro tunc*.

In an action upon contract against a married woman her coverture need not be
alleged in the complaint, but is matter of defense. (Per MAYHAM, J.)

The recovery of a second judgment for the same cause of action does not operate
to extinguish the former judgment. (Per MAYHAM, J.)

APPEAL by the defendant Rachel C. Fiero from an order,
entered in the Ulster county clerk's office on the 1st day of July,
1889, granting leave to the plaintiff to issue an execution as of
September 13, 1884.

*John E. Van Etten*, for the appellant.

*William J. Groo*, for the respondent.

LEARNED, P. J. :

The plaintiff recovered a judgment against all the defendants
August 11, 1875. On a subsequent motion for leave to issue exe-
cution, an order was made August 10, 1885, granting such leave
unless said defendant Fiero should serve an answer in ten days,
in which case the judgment was to stand as security. This order
gave leave to issue such execution (in case no answer was served)

" as of the date of September 13, 1884," which was the day for which the motion had been noticed. The defendant Fiero thereupon answered. Therefore, the leave to issue execution was practically refused, because it was not granted if the defendant Fiero should answer.

The cause went to trial in June, 1888, and on the trial the plaintiff amended his complaint by adding certain allegations showing that the defendant Fiero, a married woman, had, in writing, charged her separate property. The plaintiff recovered and entered judgment September 25, 1888. On this judgment execution was issued and returned unsatisfied. The plaintiff then moved, June 8, 1889, for leave to issue execution on the judgment of August 11, 1875, which motion was opposed. The court granted leave to issue execution *nunc pro tunc* as of September 13, 1884. From this order the defendant Fiero appeals.

The customary order that, on opening a default, the judgment shall stand as security, simply retains the judgment as a lien upon any land of the defendant. If it extends the time of the lien under section 1255, Code of Civil Procedure, it does not extend it against purchasers, creditors and mortgagees in good faith. And in this case it could be (in any event) an extension only from August 10, 1885, to September 25, 1888, a period of three years and one month and a half, as the lien of the judgment of August 11, 1875, had nearly expired when the order was made; the lien of that judgment, even if extended by the order, expired during September, 1888. It had ceased to be a lien long before the order of June 8, 1889. Although, therefore, the order made August 10, 1885, directed that the judgment should stand as security, it could not have the effect to extend the lien beyond the ten years provided for by the Code, section 1251, or the additional time under section 1255, above cited. And the provision in that order that execution might issue as of September 13, 1884, was, as we have seen, entirely nugatory. Since the defendant answered, as she was allowed to do, and, therefore, no privilege of issuing any execution was granted by the order of August 10, 1885, all that plaintiff obtained was, that the original judgment should stand as security.

Supposing, then, the original judgment does stand as security. The plaintiff may then ask leave to issue execution (§ 1377), and

this may properly be granted. But there is no propriety in issuing the execution *nunc pro tunc*. If the plaintiff desires to levy on land which the debtor has when the execution is issued, the mode is prescribed in section 1252. If he desires to revive the lien as against purchasers, etc., that he has no right to do. To insert a clause of *nunc pro tunc* is only to expose persons not before the court to the risk of litigation. The plaintiff's lien on his original judgment has expired long ago, and very possibly rights of purchasers or creditors have arisen. We ought to do nothing which will indicate danger to them where no danger really exists. And, as has been shown above, there is no more reason for a *nunc pro tunc* clause taking the execution back to August 10, 1885, than for one taking it back to August 11, 1875, for the order of August 10, 1885, in regard to the execution, had no effect in case the defendant answered, as she did in fact,

Very possibly this *nunc pro tunc* clause will not, in fact, harm *bona fide* purchasers and creditors. But it may alarm them, and perhaps induce them to buy their peace, when there is no valid claim against them. It ought not to be allowed to serve any such purpose. The execution without that clause will give the plaintiff all he is entitled to.

Order amended by striking out the *nunc pro tunc* clause; no costs to either party.

LANDON, J., concurred.

MAYHAM, J. :

On the 11th day of August, 1875, the plaintiff recovered a judgment in the Supreme Court by default against Rachel C. Fiero, Bingam F. Decker and Adaline Decker on a note purporting to have been made by said Decker and indorsed by the defendant Fiero. At the time of the making and indorsement of the note, and the entry of the judgment thereon, the defendant Rachel C. Fiero was a married woman, which fact was not alleged in the complaint. No execution was issued on the judgment within five (5) years after the entry thereof. A motion for leave to issue execution was noticed for a Special Term to be held September 13, 1884, which motion was adjourned from time to time until August 10, 1885, when an

order was made granting leave to issue execution on the judgment, as of the date of September 13, 1884, unless the defendant Fiero should within ten (10) days from the service of the order serve a verified answer.

On the 15th day of August, 1885, this defendant served an answer as required by the order, after which no proceedings were taken in the action until the trial thereof June 21, 1888, when the defendant Fiero moved to dismiss the complaint as to her, on the ground that it did not state a cause of action against her as a married woman, whereupon the court gave the plaintiff his election to submit to a dismissal of the complaint or amend the same so as to state a cause of action. The plaintiff elected to amend, and the trial proceeded, resulting in a verdict and judgment for plaintiff for the amount of the note, interest and costs, which judgment was entered September 25, 1888. On this judgment an execution was issued against all the defendants and returned wholly unsatisfied, On the 8th day of June, 1889, thereafter plaintiff made another motion for leave to issue execution on the judgment of August 11, 1875, upon the above facts, which was opposed by the defendant Fiero, on which an order was made granting leave to issue an execution *nunc pro tunc* as of the date of September 13, 1884. From this order the defendant Fiero appeals to this court.

The appellant insists that the election of the plaintiff to amend his complaint on the trial was, in legal effect, a concession that the original judgment was unauthorized and invalid as against the defendant Fiero. That the making of such election was a concession, on his part in open court, that the original complaint did not state a cause of action against the defendant Fiero, and that the judgment was, therefore, as to her, unauthorized; and that both parties, having acted upon that concession, followed by the recovery of a new and different judgment, and an attempted enforcement of the same by the plaintiff by execution, are concluded.

We cannot agree with the appellant in her contention that the first judgment, for want of an allegation in the complaint that she expressly charged her separate estate, was unauthorized and invalid. It was never necessary, in order to recover against a married woman, to allege in the complaint the facts which, if controverted, would have to be proved to charge her.

It is enough to complain generally upon the contract or obligation. She may be sued and declared against as a *feme sole*, and her coverture is a matter of defense only. In *Smith* v. *Dunning*, which was an action upon a note of a married woman, the defense of coverture was set up. In discussing that question the court says : "She was bound by the note, and could be sued upon it as if she were unmarried."

It was wholly unnecessary to allude in the complaint in any way to her coverture or her separate estate. Her coverture was matter of defense to be set up if available. (*Smith et al.* v. *Dunning*, 61 N. Y., 251 ; to the same effect is *Hier* v. *Staples*, 51 id., 136 ; also *Frecking* v. *Rolland*, 53 id., 422.)

The first judgment, therefore, not having been paid or reversed, must, for the purposes of this motion, be regarded as valid, unless the same was, by the acts of the defendant in the prosecution of the action and the recovery of the second judgment, expressly waived or merged in the second recovery.

The defendant insists that such was the effect of the election of the plaintiff to amend his answer, and that he cannot now for that reason enforce the old judgment by execution ; and several cases are cited to show that a party by his own act may waive a right, and after his adversary has acted upon such waiver he cannot disregard the same, and assume and enforce for his own benefit the right which he has thus waived. But none of the cases cited hold that a judgment can be thus waived, or that the recovery of a second judgment for the same cause of action is a merger or extinguishment of the first.

In *Lansing* v. *Caswell* (4 Paige, 519) it was held that when a party had appealed from the decision of the commissioners of highways in laying out a highway, if he afterward participated in the assessment of damages, he thereby waived his appeal.

In *Brady* v. *Donnelly* (1 N. Y., 126) the defendant demurred to a bill in equity and the demurrer was overruled by the vice-chancellor, whereupon the defendant appealed to the Court of Appeals, but pending such appeal, answered the bill upon its merits ; it was held that by answering he had waived his appeal. In *Bennett* v. *Van Syckel* (18 N. Y., 481), the party, by a judgment, was decreed to receive certain advancement and be indemnified against certain

covenants, and was then to assign certain leases, held that he could not, after adopting the beneficial part, repudiate that which was of benefit to the other party, but that he had waived his right to object to the performance of the part which operated to his prejudice.

In *Smith* v. *Rathbun* (75 N. Y., 122) the plaintiff applied to the referee for leave to amend his complaint, which was granted upon condition that the defendant might demur to the amended complaint; after amending his complaint, the plaintiff objected that defendant had no right to demur to an amendment made on the trial, *held*, that having availed himself of the conditional order, he was bound by the condition, and had waived his right to object. But it will be seen that in none of these cases has a valid judgment been extinguished by waiver, nor have we been able to find a case which goes to that length. Nor do we see how, on this motion, the judgment of August 11, 1875, can be held invalid or extinguished. Ordinarily, a judgment of a court of record can only be extinguished by payment, release, satisfaction of record or lapse of twenty (20) years, none of these facts exist as to this judgment, and the court cannot, on this appeal, hold that it has been extinguished, superseded by the latter judgment or merged in it. It is true that at the time of the making of the order by Judge WESTBROOK, to which effect is given by the order from which this appeal is taken, more than ten (10) years had lapsed after the entry of the judgment, and the same had, at the time the order was made, ceased to be a lien on the real estate, and an order for the issuing of an execution could not revive the lien.

In cases where defaults are opened, it is a common practice to allow the judgment already entered to stand as security; and the learned judge, who granted the order appealed from, held that effect should be given to the order of Judge WESTBROOK. It is insisted by the defendant that the order made by the Special Term, after the lapse of ten years, although by its terms *nunc pro tunc* as of a date prior to that time, is unjust, as its object was to revive a lien already extinct. It is by no means certain that the order could have any such effect, or that the court could, by its order actually made after a judgment had ceased to be a lien, revive the same; that, in effect, would be reviving and creating a lien barred by a statute.

There does not seem to be any limit of time during the life of a judgment within which an execution may issue under subdivision 2 of section 1377 of the Code; and without determining what property of the judgment-debtor under it could be taken upon execution, we think the order, granting leave to issue execution, should be so far modified as to allow an execution to issue on the original judgment as of this date, but not *nunc pro tunc.*